**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| DIANNE ELLIS, | * |
| | * |
|     Plaintiff, | * |
| | * |
| v. | *  CASE NO.: _____ |
| | * |
| THE BUREAUS, INC., BUREAUS | * |
| INVESTMENT GROUP PORTFOLIO | * |
| NO. 15, LLC, STONELEIGH RECOVERY | * |
| ASSOCIATES, LLC and CAPITAL ONE, | * |
| N.A., | * |
| | * |
|     Defendants. | * |

**COMPLAINT**

COMES NOW Plaintiff, Dianne Ellis f/k/a Cheryl Peterman ("Plaintiff"), by counsel, and for her Complaint against the Defendants, alleges as follows:

**PRELIMINARY STATEMENT**

Plaintiff's claims arise from the wrongful attempts to collect a debt against Plaintiff which is not owed. These collection attempts stem from a loan agreement with Defendant Capital One, N.A. which, by that Defendant's own verbal and written confirmation, was satisfied in whole. Capital One nevertheless began an aggressive, harassing and unlawful campaign to collect sums which it had confirmed were paid. Capital One then placed the account with a series of third-party professional collectors, including Defendants The Bureaus, Inc., Bureaus Investment Group Portfolio No. 15, LLC, and Stoneleigh Recovery Associates, LLC. These collectors likewise engaged in unlawful attempts to collect the alleged debt. Plaintiff seeks to recover actual, statutory,

and punitive damages, plus costs and attorney's fees. She brings statutory claims under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §1692, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq*. Plaintiff also asserts claims under Alabama common law arising from the unlawful actions taken by Defendants.

## JURISDICTION

1. This action includes claims which arise under the statutes of the United States and this Court's jurisdiction conferred by 28 U.S.C. §1331, 15 U.S.C. §1692k(d), 47 U.S.C. §227, *et seq*. and 28 U.S.C. §1367. This action also includes state law claims as to which this Court has pendent jurisdiction.

## PARTIES

2. Plaintiff is a natural person and adult resident of Baldwin County, Alabama. She is a "consumer" as defined by 15 U.S.C. §1692a(3) and a "person" as that term is defined by 47 U.S.C. §153(39).

3. Defendant The Bureaus, Inc. ("Bureaus") is a corporation formed outside the State of Alabama and has its principal place of business in Illinois. Bureaus is a professional debt collector. As a regular and principal part of its business, Bureaus uses interstate commerce and the mails to collect debt owed to another and/or debt which has been assigned to Bureaus after the debt is considered by the lender to be in default. Bureaus is a "debt collector" as defined by 15 U.S.C. §1692a(6).

4. Defendant, Bureaus Investment Group Portfolio No. 15, LLC ("Portfolio"), is a limited liability company formed outside the State of Alabama and has its principal place of business in Illinois. Portfolio is a professional debt collector. As a regular and principal part of its business,

Portfolio uses interstate commerce and the mails to collect debt owed to another and/or debt which has been assigned to Portfolio after the debt is considered by the lender to be in default. Portfolio is a "debt collector" as defined by 15 U.S.C. §1692a(6).

5. Defendant, Stoneleigh Recovery Associates, LLC ("Stoneleigh"), is a limited liability company formed outside the State of Alabama and has its principal place of business in Illinois. Stoneleigh is a professional debt collector. As a regular and principal part of its business, Stoneleigh uses interstate commerce and the mails to collect debt owed to another and/or debt which has been assigned to Stoneleigh after the debt is considered by the lender to be in default. Stoneleigh is a "debt collector" as defined by 15 U.S.C. §1692a(6).

6. Defendant, Capital One, N.A. ("Capital One"), is a corporation formed outside the State of Alabama and has its principal place of business in Virginia.

## FACTS

7. In March of 2014, Plaintiff financed the purchase of a Polaris off-road vehicle ("Polaris") in the amount of $20,901.00 with Capital One. The purchase price was charged to Plaintiff's credit card with Capital One and, in exchange for the loan, a lien in favor of Capital One was placed on the Polaris.

8. After making several monthly payments, Plaintiff decided to sell the Polaris. Plaintiff placed an advertizement on Craigslist and found a purchaser.

9. On June 18, 2015, Capital One facilitated the pay-off of Plaintiff's indebtedness with the purchaser. Plaintiff, Capital One, the purchaser, and the purchaser's bank participated in a telephone conference during which the pay-off was accomplished. During this telephone conference, the purchaser provided Capital One his debit card information, and Capital One

processed payment for the entire outstanding balance of Plaintiff's Capital One credit card account.

10.     Capital One instructed Plaintiff to retain possession of the Polaris until she received written confirmation from Capital One stating that her credit card debt had been satisfied in full.

11.     On or about June 21, 2015, Plaintiff received written confirmation by letter from Capital One stating that her credit card balance had been satisfied in full and enclosed a Release of Lien executed by Capital One evidencing said payment and satisfaction of the debt.  A copy of Capital One's letter confirming Plaintiff's credit card balance was paid in full and Capital One's Release of Lien are attached hereto as Exhibits "A" and "B" respectively.

12.     On or about June 23, 2015, relying on Capital One's representations made in its Release of Lien and written confirmation that her credit card debt had been satisfied in full, Plaintiff relinquished possession of the Polaris to the purchaser.

13.     Around August 2015, Plaintiff began receiving notices from Capital One stating that her account was delinquent.  Plaintiff also began receiving numerous telephone calls from Capital One regarding her "defaulted loan."  Capital One would sometimes call six (6) times a day, including on Sundays.  Plaintiff specifically told Capital One that she did not owe anything and that the account had been satisfied.  Plaintiff disputed her late charge assessments and repeatedly explained that her credit card debt had been paid in full.

14.     Some or all of the collection calls made by Capital One to Plaintiff were made utilizing an "Automatic Telephone Dialing System" ("ATDS"), as defined in 47 U.S.C. §227(a)(1), and an artificial or prerecorded voice to deliver a message aimed at collection of an alleged debt.

15.     The calls by Capital One to Plaintiff were made without her prior express consent.

16.     In a letter dated February 19, 2016, Capital One notified Plaintiff that her credit card

account with a past-due balance of $19,369.82 had been acquired by Defendant Portfolio.

17. Thereafter, Plaintiff began receiving telephone calls from Defendant Portfolio and/or Defendant Bureaus. During these telephone calls, Plaintiff insisted that she did not owe the debt; however, Defendant Portfolio and/or Defendant Bureaus continued to call her regarding the satisfied debt.

18. Some or all of the collection calls made by Defendants Portfolio and Bureaus were made utilizing an "Automatic Telephone Dialing System," ("ATDS"), as defined in 47 U.S.C. §227(a)(1), and/or an artificial or prerecorded voice to deliver a message aimed at collection of an alleged debt.

19. The calls by Defendants Portfolio and Bureaus to Plaintiff were made without her prior express consent.

20. Defendants Portfolio and Bureaus wrongfully reported to consumer reporting agencies that Plaintiff's account was delinquent and past-due, and Defendant Portfolio subsequently referred Plaintiff's credit card account for collection to Defendant Stoneleigh representing to Defendant Stoneleigh that it was delinquent and past-due.

21. Defendants have reported to consumer reporting agencies that Plaintiff's account is delinquent and past-due.  This has negatively impacted Plaintiff's creditworthiness.  Plaintiff has been denied credit on at least three separate occasions as a result.

### COUNT ONE
### (Fair Debt Collections Practices Act Violations)

22. Plaintiff realleges and incorporates each of the proceeding paragraphs as if fully set out herein.

23. This is a claim asserted against Defendants Portfolio, Bureaus and Stoneleigh for

multiple violations of the FDCPA, 15 U.S.C. §1692 (the "FDCPA").

24. Defendants Portfolio, Bureaus and Stoneleigh are "debt collectors" as defined by the FDCPA 15 U.S.C. §1692a(6).  The alleged debt which Bureaus attempted to collect from Plaintiff is a "debt" as defined by the FDCPA 15 U.S.C. §1692a(5).

25. Defendants Portfolio, Bureaus and Stoneleigh have violated the FDCPA in connection with its attempts to collect on an alleged consumer debt.  Their violations include, but are not limited to, the following:

   a. Engaging in communications with Plaintiff, the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of a debt.  This is a violation of 15 U.S.C. §1692d.

   b. Making repeated attempts to collect upon a debt prior to notifying Plaintiff that she has a right to dispute the validity of the debt and the right to request written verification of the debt as required by 15 U.S.C. §1692g(a).

   c. Attempting to collect amounts which are not authorized by any contract or permitted by law.  This is a violation of 15 U.S.C. §1692f(1).

   d. Making attempts to collect on a debt which Defendants knew or should have known has no basis in law or fact.  This is a violation of 15 U.S.C. §§1692f & 1692e(2)(A).

   e. Communicating to any person, including credit bureaus, credit information which is known or which should be known to be false in violation of 15 U.S.C. § 1692e(8).

26. All of the actions taken by Defendants in violation of the FDCPA occurred within one (1) year of the filing prior to this action.

27. As a proximate result of their violation of the FDCPA, Plaintiff has suffered actual damages, including mental and emotional pain, distress and anguish, humiliation and embarrassment, as well as damages to her credit and reputation.

28. As a result of its violations of the FDCPA, Defendants are liable to Plaintiff for

compensatory damages, statutory damages, costs and attorney's fees, and for declaratory judgment that Defendants' conduct violated the FDCPA.

WHEREFORE, Plaintiff respectfully requests that judgment be severally entered against Defendants Portfolio, Bureaus and Stoneleigh for the following:

a. Actual damages, including damages for mental and emotional pain, distress and anguish, humiliation and embarrassment, as well as damages to her credit and reputation;

b. Statutory damages pursuant to 15 U.S.C. §1692k;

c. Declaratory Judgment that said Defendants' conduct violated the FDCPA;

d. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k;

e. Such other and further relief as this Court deems just and proper, the premises considered.

## COUNT TWO
### (Telephone Consumer Protection Act Violation)

29. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

30. This is an claim brought pursuant to the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq*.

31. Some or all of the collection calls made to Plaintiff by Defendants utilizing an ATDS and/or prerecorded message were made without Plaintiff's prior express consent and each such call constitutes a violation of the TCPA.

32. Some or all of the collection calls by Defendants using an ATDS have been made intentionally, without Plaintiff's prior express written consent, and in plain violation of the TCPA.

33. Plaintiff has suffered actual damages and injury-in-fact, including but not limited to mental anguish and emotional distress resulting from the unlawful calls. Such calls have also

unlawfully invaded her privacy and her statutory rights provided under the TCPA.

34. As a result of Defendants' conduct in violation of the TCPA, Plaintiff is entitled to an award of minimum statutory damages of $500.00 for each of the unlawful calls.

35. Because each of the unlawful calls were made intentionally, willfully and/or knowingly by Defendants, an award of statutory damages of may be increased to as much as $1,500.00 for each of the subject telemarketing calls.

**WHEREFORE**, Plaintiff request that this Court enter a judgment against each of the Defendants for violation of the TCPA and award the following relief:

a. Statutory damages in the amount of $500.00 for each call that violated the TCPA;

b. Enhanced statutory damages for willful and/or knowing violations of up to $1,500.00 for each unlawful call; and

c. Such other, further, and different relief to which Plaintiffs may be entitled as this Court may deem just and proper.

## COUNT THREE
### (Negligence)

36. Plaintiff realleges and incorporates each of the proceeding paragraphs as if fully set out herein.

37. The actions taken by the Defendants in attempting to collect the alleged debt against Plaintiff constitute negligence. Plaintiff suffered damage as a proximate result of Defendants' negligence.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants for negligence and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress, plus interest in costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT FOUR
### (Wantonness)

38.     Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

39.     The actions taken by Defendants in attempting to collect the alleged debt against Plaintiff constitute wantonness. Those actions were made with a wanton, reckless or conscious disregard for Plaintiff's rights and well-being.

40.     Plaintiff suffered damages as a proximate result of Defendants' wantonness.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants for wantonness and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress, and punitive damages, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT FIVE
### (Wanton Collections)

41.     Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

42.     The actions taken by Defendants in attempting to collect the alleged debt, including but not limited to the harassing phone calls described above, exceeded the bounds of reasonableness and constitute a wrongful and actionable intrusion upon Plaintiff, made with a wanton or reckless regard for the welfare of Plaintiff.

43.     The acts and omissions which form the basis of this claim do not include any reporting of information to any consumer reporting agency.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Defendants wanton collections and Plaintiff compensatory damages, including damages for mental anguish and

emotional distress; and punitive damages, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT SIX
### (Defamation – Capital One)

44. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

45. In connection with the transfer or referral of Plaintiff's credit card account to Defendant Bureaus and/or Defendant Portfolio, Capital One published false and defamatory information concerning Plaintiff. Specifically, Capital One published statements falsely characterizing her credit card debt as delinquent and past-due. Those statements were made with the knowledge that they were false or with reckless disregard of whether they were false.

46. The acts and omissions which form the basis of this claim do not include any reporting of information to any consumer reporting agency.

47. Plaintiff has suffered damages, including special damages, as a result of Capital One's defamatory statements. Those damages include mental and emotional pain, distress and anguish, humiliation and embarrassment; as well as damages to Plaintiff's credit and reputation.

WHEREFORE, Plaintiff requests this Court to enter a judgment against Capital One for defamation and award compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Plaintiff further requests such other relief as this Court deems just and proper, the premises considered.

## COUNT SEVEN
### (Defamation – Portfolio)

48. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

49. In connection with the "referral" of collection of Plaintiff's credit card account to

Defendant Stoneleigh, Defendant Portfolio published false and defamatory information concerning Plaintiff. Specifically, Defendant Portfolio published statements falsely characterizing her credit card debt as delinquent and past-due. Those statements were made with the knowledge that they were false or with reckless disregard of whether they were false.

50. Portfolio has published false and defamatory information concerning Plaintiff to third parties, including one or more consumer reporting agencies, which in turn published that information to its subscribers for purposes of evaluating Plaintiff's creditworthiness. Specifically, Portfolio published statements falsely characterizing her credit card debt as delinquent and past-due. Those statements were made with the knowledge that they were false or with reckless disregard of whether they were false.

51. The acts and omissions which form the basis of this claim do not include any reporting of information to any consumer reporting agency.

52. Plaintiff has suffered damages, including special damages, as a result of Portfolio's defamatory statements. Those damages include mental and emotional pain, distress and anguish, humiliation and embarrassment; as well as damages to Plaintiff's credit and reputation.

WHEREFORE, Plaintiff requests this Court to enter a judgment against Portfolio for defamation and award compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Plaintiff further requests such other relief as this Court deems just and proper, the premises considered.

## COUNT EIGHT
**(Invasion of Privacy)**

53. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

54. The actions taken by the Defendants in repeatedly calling Plaintiff's cell and home

phones and making false and unsubstantiated representations to Plaintiff constitute a wrongful invasion of Plaintiff's privacy.

55. Defendants' actions caused wrongful intrusion which has disrupted and harmed Plaintiff in such a manner as to cause outrage, mental suffering, shame, and humiliation to any person with ordinary sensibilities.

56. The acts and omissions which form the basis of this claim do not include any reporting of information to any consumer reporting agency.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants for invasion of privacy and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress, and punitive damages, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT NINE
### (Fraudulent Misrepresentation)

57. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

58. Defendant Capital One specifically represented to Plaintiff, as described above, that her credit card debt had been satisfied in full with the intent that Plaintiff should rely thereon.

59. Capital One instructed Plaintiff to maintain possession of the Polaris until she received written confirmation from Capital One that her credit card debt had been paid in full.

60. Reasonably relying on Capital One's material representation, Plaintiff, after receiving written confirmation that the credit card debt was satisfied, followed Capital One's instructions and relinquished possession of the Polaris. But for Capital One's representation that her credit card debt was satisfied, Plaintiff would not have relinquished possession of the Polaris.

61. The representations made by Capital One that the credit card debt was satisfied was

false when made and Capital One knew or should have known that they were false when they were made.

62.     Plaintiff acted on Capital One's misrepresentations by relinquishing possession of the Polaris and ceased making monthly payments toward the Capital One credit card, and has suffered damages as a proximate result thereof.

WHEREFORE Plaintiff requests that the Court enter a judgment against Defendant Capital One for fraudulent misrepresentation and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress, punitive damages, plus interest and costs.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,

s/ *Kenneth J. Reimer*
KENNETH J. REIMER
LAURA C. STRACHAN
CHRISTINE B. SEGARRA
*Attorneys for Plaintiff, Dianne Ellis*

**UNDERWOOD & RIEMER, P.C.**
166 Government Street, Suite 100
Mobile, Alabama 36602
(P) 251-432-9212
(F) 251-433-7172
Email: Kjr@AlaConsumerLaw.com

**STONE, GRANADE & CROSBY, P.C.**
Attorneys at Law
8820 U.S. Highway 90
Daphne, Alabama 36526
(P) 251-626-6696
(F) 251-626-2617
Email:  lstrachan@sgclaw.com
         cbs@sgclaw.com

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL AS FOLLOWS:**

The Bureaus, Inc.
2094 Myrtlewood Drive
Montgomery, Alabama 36111

Bureaus Investment Group Portfolio No. 15, LLC
2094 Myrtlewood Drive
Montgomery, Alabama 36111

Stoneleigh Recovery Associates, LLC
CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, Alabama 36104

Capital One, National Association
CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, Alabama 36104

# EXHIBIT "A"

Capital One
3800 Golf Road
Rolling Meadows IL 60008

06/19/2015

CHERRYL PETERMAN
12305A MARY ANN BEACH RD
FAIRHOPE AL 36532-5461

RE:   Account Number:  xxxxxxxxxx9155
                VIN:  3NSVDE99XFF369708
       Year/Make:  2015  POLA

Dear CHERRYL PETERMAN,

The above referenced loan has been paid in full and our lien has been released. This letter is being issued in lieu of a paid and cancelled note. Also enclosed is the Lien Satisfied title documentation that we had on file for this loan. Please retain this letter and your title information for your records.

Thank you again for allowing us the opportunity to serve you. We look forward to doing business with you again. Should you have any further questions, please contact our Customer Service Department at (800) 695-6950 Monday through Friday 8:00 a.m. to 5:00 p.m. Pacific Time.

Sincerely,

Capital One

© 2013 Capital One. Capital One is a federally registered service mark. All rights reserved.

3NSVDE99XFF369708 (AL)                    HR-RL-RO                                    RD-13252
PETERMAN, CHERRYL

EXHIBIT "B"

Capital One
3800 Golf Road
Rolling Meadows IL 60008

06/19/2015

CHERRYL PETERMAN
12305A MARY ANN BEACH RD
FAIRHOPE AL 36532-5461

# RELEASE OF LIEN
## ORIGINAL IMPORTANT DOCUMENT - DO NOT DESTROY

This is to certify that the lien in favor of Capital One, N.A. has been fully satisfied for the following vehicle/vessel and has not been assigned to another party.

VIN: 3NSVDE99XFF369708
Year: 2015
Make: POLA
Registered Owner(s): PETERMAN, CHERRYL

Capital One, N.A., pursuant to a power of attorney granted to FDI Computer Consulting, Inc.
By: _____
Name: Cecil Callender - Agent
Title: _____

CAPITAL ONE, N.A

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Sacramento

On _____ JUN 2 2 2015 _____ before me, _____ Kazia Lor _____,
personally appeared _____ Cecil Callender _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

KAZIA LOR
Commission # 2090427
Notary Public - California
Sacramento County
My Comm. Expires Nov. ___, 2018

3NSVDE99XFF369708 (AL)
PETERMAN, CHERRYL

HR-LS-RO

RD-13252

LIMITED POWER OF ATTORNEY

HSBC Bank Nevada, National Association, formerly known as Household Bank (SB), N.A., a national banking association, having its principal office at 1111 Town Center Drive, Las Vegas NV 89144, Las Vegas, Nevada, and HSBC Retail Credit (USA) Inc., a New York corporation, having its principal office at One HSBC Center Buffalo NY 14203 (each, the "*Grantor*"), hereby appoint Capital One Services, LLC, a Delaware limited liability company ("*Capital One*"), serving on behalf of the issuer, Capital One N.A. and having its principal office at 15000 Capital One Drive, Richmond, VA 23238 , as the true and lawful attorney with respect only to the actions described below, and hereby vests in Capital One the limited power and authority to take those actions described below:

1. To prepare, execute, acknowledge, verify, swear to, deliver, endorse, negotiate, record and file, in the Grantor's name, place and stead, all agreements, instruments, documents, assignments and certificates that Capital One, in its reasonable discretion, deems advisable, desirable, proper and/or necessary for Capital One to (a) grant, receive, maintain, correct, perfect or release a security interest in each vehicle securing an Account (as defined in the Purchase and Assumption Agreement, dated as of August 10, 2011, as it may be amended from time to time (the "*Agreement*"), by and among HSBC Finance Corporation, HSBC USA, Inc., HSBC Technology and Services (USA), Inc. and Capital One Financial Corporation), purchased by Capital One or its applicable affiliate pursuant to the Agreement and the proceeds thereof in favor of Capital One or its applicable affiliate, (b) to exercise the rights of the Grantor with respect to each such vehicle and the proceeds thereof (including, without limitation, the right to repossess and dispose of any such vehicle), (c) to grant, sell, assign and transfer each related document to Capital One or its applicable affiliate, and (d) to generally do and perform all and any other act whatsoever as may be advisable, desirable, proper and/or necessary with respect to the authority granted in clauses (a) through (c) of this paragraph. The foregoing shall include, without limitation, the power and authority to make, execute, acknowledge, verify, swear to, deliver, endorse, negotiate, record and file Certificates of Title, financing statements, releases of lien, and similar documents with respect to each vehicle and all amendments and supplements thereto and to sign any assignments of the related documents to Capital One or its applicable affiliate, that Capital One, in its reasonable discretion, deems advisable, desirable, proper and/or necessary, all in connection with, and consistent with the terms of the Agreement.

2. To prepare, execute, acknowledge, verify, swear to, deliver, endorse, negotiate, record and file, in the Grantor's name, place and stead, all agreements, instruments, documents, assignments and certificates that Capital One, in its reasonable discretion, deems advisable, desirable, proper and/or necessary for Capital One to (a) grant, receive, maintain, correct, perfect or release a security interest in each vehicle securing an account for which a lien document is erroneously filed naming Grantor as the lienholder within 120 days of the date hereof by any dealer subject to a dealer agreement assigned to Capital One or any of its affiliates pursuant to the Agreement (each, a "*Dealer*") and the proceeds thereof in favor of Capital One or its applicable affiliate, (b) to exercise the rights of the Grantor with respect to each such vehicle and the proceeds thereof (including, without limitation, the right to repossess and dispose of any such vehicle), (c) to grant, sell, assign and transfer each related document to Capital One or its applicable affiliate, and (d) to generally do and perform all and any other act whatsoever as may be advisable, desirable, proper and/or necessary with respect to the authority granted in clauses (a) through (c) of this paragraph. The foregoing shall include, without limitation, the power and authority to make, execute, acknowledge, verify, swear to, deliver, endorse, negotiate, record and file Certificates of Title, financing statements, releases of lien and similar documents with respect to each vehicle and all amendments and supplements thereto and to sign any assignments of the related documents to Capital One or its applicable affiliate, that Capital One, in its reasonable discretion, deems advisable, desirable, proper and/or necessary, all in connection with, and consistent with the terms of the Agreement.

3. To prepare, execute, deliver, endorse and negotiate in the name of the Grantor payment checks from dealers and customers in connection with each Account, as defined in the Agreement, purchased by Capital One or its applicable affiliate pursuant to the Agreement.

4. To prepare, execute, deliver, endorse and negotiate in the name of Grantor payment checks, money orders, or other instruments made payable to Grantor, received as payment with respect to each Account as defined in the Agreement purchased by Capital One or its applicable affiliate pursuant to the Agreement.

Capital One hereby agrees that, in connection with any exercise of the power and authority vested by paragraph 2 above, Capital One shall use its reasonable best efforts to promptly request that the applicable Dealer (i) thereafter correctly record Capital One or its applicable affiliate and not Grantor as the lienholder with respect to vehicles that are the subject of accounts owned by Capital One or its applicable affiliate and (ii) coordinate with the applicable account customer to execute new lien documentation so naming Capital One or its applicable affiliate and not Grantor as the lienholder.

The parties hereby agree that the granting of this Limited Power of Attorney shall not in any way alter the parties respective rights to indemnification provided for in Article 8 of the Agreement.

The Grantor does hereby ratify and confirm any and all things whatsoever that Capital One may do, subject to the limitations contained herein, by virtue hereof with respect to the powers and authorities granted hereby. This Limited Power of Attorney shall be deemed to have been executed under seal, to be coupled with an interest, and shall extend to any successor of the Grantor.

This Limited Power of Attorney shall commence on the date hereof and shall continue in full force and effect until each of the purchased Accounts assigned to Capital One or its applicable affiliate under the Agreement are fully paid or repurchased, at which time this Limited Power of Attorney shall terminate ("Termination"). Any third party may rely upon this document as Capital One's authority to continue to exercise the powers herein granted unless Termination has been recorded in the public records of the jurisdiction where this Limited Power of Attorney has been recorded, or unless a third party has received actual notice of Termination.

This Limited Power of Attorney shall be governed by and construed in accordance with New York law.

[*Signature Page Follows*]

Capital One Confidential/Proprietary

IN WITNESS WHEREOF, Grantor has executed this Limited Power of Attorney effective as of the 1st day of May, 2012.

HSBC Bank Nevada, N.A.

By: _____
Name: Connie Momen
Title: Executive Vice President

STATE OF ILLINOIS )
                 ) SS
COUNTY OF LAKE   )

On this 30th day of April, 2012, before me, a Notary Public in the State of Illinois, personally appeared Connie Momen, to me personally known to be an officer of HSBC Bank Nevada, N.A., and such officer acknowledged the execution of said instrument to be the voluntary act and deed of the entity named above his signature.

_____
Notary Public

OFFICIAL SEAL
ISRAEL C ZAREMBA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 05/03/15

HSBC Retail Credit (USA) Inc.

By: _____
Name: Eesh K. Bansal
Title: President

STATE OF NEW YORK )
                  ) SS
COUNTY OF _____ )

On this 30th day of April, 2012, before me, a Notary Public in the State of New York, personally appeared Eesh K. Bansal, to me personally known to be an officer of HSBC Retail Credit (USA) Inc., and such officer acknowledged the execution of said instrument to be the voluntary act and deed of the entity named above his signature.

_____
Notary Public

[SEAL]

JANE H. KAUH
Notary Public, State of New York
No. 02KA6129152
Qualified in New York County
Commission Expires June 20, 20__

CAPITAL ONE SERVICES, LLC

By: _____
Name: BRADLEY R. THAYER
Title: MANAGING VICE PRESIDENT,
       CORPORATE DEVELOPMENT

STATE OF Virginia  )
                   ) SS
COUNTY OF Fairfax  )

On this 30th day of April, before me, a Notary Public in the State of Virginia, personally appeared [name], to me personally known to be an officer of [Capital One Entity], and such officer acknowledged the execution of said instrument to be the voluntary act and deed of the entity named above his signature.

_____
[SEAL]

CHRISTINE A VAN HORN
NOTARY PUBLIC
REG. #307303
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES JULY 31, 2013